# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA

BANK OF AMERICA CORP.,      )
                     )
      Plaintiff,      )    Case No. 3:17-cv-00546
                     )
      v.              )
                     )
UNITED STATES,      )
                     )
      Defendant.      )

---

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

---

DAVID A. HUBBERT
  Deputy Assistant Attorney General

DENA J. KING
  United States Attorney

JASON BERGMANN
STEPHAINE SASARAK
Trial Attorneys, Tax Division
  U.S. Justice Department
  P. O. Box 227
  Washington, D.C. 20044
  JB Telephone:  (202) 616-3425
  SS Telephone: (202) 307-2089
  FAX: (202) 514-9440
  JB jason.bergmann@usdoj.gov
  SS Email: stephaine.a.sasarak@usdoj.gov

# TABLE OF CONTENTS

**Page(s)**

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT** .................................................................1

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT** ..................................1

II.    **LEGAL BACKGROUND REGARDING INTEREST NETTING**..................5

      A.  Underpayment and overpayment interest under the Internal
          Revenue Code ........................................................................................5

      B.  The netting of underpayment interest and overpayment interest......................6

III.   **STATEMENT OF FACTS** ..............................................................................8

      A.  The Bank's interest-netting claims in this case..................................................8

      B.  The specifics of the test cases .......................................................................10

      C.  The merger transaction affecting the same-taxpayer analysis .........................13

IV.   **ARGUMENT** ..................................................................................................14

      A.  The overpayments in Merrill's 2005 and 1999 tax years and the
          underpayment in the Bank's 2005 tax year were not "by the same
          taxpayer," because Merrill and the Bank filed different tax returns
          under different taxpayer-identification numbers for each of those years .......14

      B.  The 2013 merger of Merrill into the Bank did not make those two
          taxpayers the "same" for overpayments and underpayments occurring
          beforehand........................................................................................................18

      C.  To the extent that the Court of Federal Claims held otherwise in *Wells
          Fargo I*, it was wrong..................................................................................21

V.      **CONCLUSION**................................................................................................25

# TABLE OF CONTENTS

**Appendix:**

Exhibit    Description

1.     490 Report for Bank of America 2005 tax year from Exhibit G to the Second Amended Complaint

2     490 Report for Merrill Lynch 1999 tax year from Exhibit G to the Second Amended Complaint

3.     490 Report for Merrill Lynch 2005 tax year from Exhibit G to the Second Amended Complaint

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Bank of America Corp. v. United States*,
  964 F.3d 1099 (Fed. Cir. 2020)..................................................................20n

*Blakely v. Wards*
  738 F.3d 607 (4th Cir. 2013) ....................................................................14

*Bowers v. Andrew Weir Ship., Ltd.*,
  27 F.3d 800 (2d Cir. 1994)........................................................................22

*Energy East Corp. v United States*,
  645 F.3d 1358 (Fed. Cir. 2011)......................................................... *passim*

*Fang Lin Ai v. United States*,
  809 F.3d 503 (9th Cir. 2015) ....................................................................20n

*Ford Motor Co. v. United States*,
  908 F.3d 805 (Fed. Cir. 2018)...................................................................16n

*Frandsen v. Jensen-Sundquist Agency, Inc.*,
  802 F.2d 941 (7th Cir. 1986) .....................................................................23

*General Elec. Co. v. United States*,
  56 Fed. Cl. 488 (2003) ..............................................................................10n

*Johnson v. United States*,
  127 Fed. Cl. 529 (2016), *reconsideration denied*,
   127 Fed. Cl. 661 (2016)............................................................................17

*Magma Power Co. v. United States*,
  101 Fed. Cl. 562 (2011) .........................................................................1, 17

*McAdams v. Robinson*,
  26 F.4th 149 (4th Cir. 2022) .....................................................................14

Case 3:17-cv-00546-RJC-WCM   Document 69   Filed 08/19/22   Page 4 of 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Sunoco, Inc. v. Commissioner,*
663 F.3d 181 (3d Cir. 2011)................................................................5

*United States v. Leak,*
426 F. Supp. 3d 206 (W.D.N.C. 2019) ...............................................14

*United States v. Muhammad,*
16 F.4th 126 (4th Cir. 2021) ..............................................................14

*United States v. Wirsing,*
942 F.3d 175 (4th Cir. 2019), *as amended* (Nov. 21, 2019).......................20-21

*Vons v. United States,*
51 Fed. Cl. 1 (2001) ...........................................................................24

*Wells Fargo & Co. v. United States* (*Wells Fargo II*),
827 F.3d 1026 (Fed. Cir. 2016)................................................... *passim*

*Wells Fargo & Company v. United States,*
117 Fed. Cl. 30 (2014), (*Wells Fargo I*), *rev'd in part,* 827 F.3d 1026
(Fed. Cir. 2016)................................................................. 2, 21-22, 24

**Statutes:**

Del. Code Ann. § 259(a) ............................................................9, 23

IRS Restructuring and Reform Act of 1998, Pub. L. No. 104-206,
§ 3301(c)(2), 112 Stat. 685, 741 (1998), *amended by* Pub. L. No. 105-277,
§ 4002(d), 112 Stat. 2681, 2681-906 (1998)................................... 6-7n

Internal Revenue Code of 1986 (26 U.S.C.):

§ 11............................................................................................15
§ 441........................................................................................20n
§ 816........................................................................................20n
§ 1362......................................................................................20n
§ 1501.......................................................................................15
§ 6012.......................................................................................15
§ 6072.........................................................................................5
§ 6109.......................................................................................16
§ 6110.......................................................................................24

Case 3:17-cv-00546-RJC-WCM   Document 69   Filed 08/19/22   Page 5 of 31

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C):

    § 6151....................................................................................................5
    § 6601................................................................................................5, 11
    § 6611.............................................................................................. 5-6, 11
    § 6621........................................................................................... *passim*
    § 7701..................................................................................................14
    § 7703................................................................................................21n

**Other Authorities:**

Black's Law Dictionary (9th ed. 2009)................................................ 23-24

H.R. Rep. No. 105-599 (1998) (Conf. Rep.)....................................... 17-18

H.R. Rep. No. 105-364 (1997)............................................................7

Rev. Proc. 99-43, 1999-2 C.B. 579................................................... 6-7n

Rev. Proc. 2000-26, 2000-1 C.B. 1257.............................................. 6-7n

S. Rep. No. 87-1102 (1961)................................................................7

Treasury Regulation (26 C.F.R.)

    § 301.6109-1 .....................................................................................16
    § 301.6601-1 .................................................................................. 5-6

Webster Third New Int'l Dictionary (1969) .......................................14

Merriam-Webster, "Same," https://www.merriam-webster.com/dictionary/same
    (last visited August 19, 2022) ...........................................................14

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BANK OF AMERICA CORP., | ) | |
| | ) | Case No. 3:17-cv-00546 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

This tax case concerns the computation of interest under the Internal Revenue Code. Bank of America Corp. ("BAC" or "the Bank") claims an entitlement to interest adjustments under § 6621(d),[1] which equalizes the interest rates on "equivalent overpayments and underpayments" of tax "by the same taxpayer," a process referred to as "interest netting."

The principal issue in this case involves the statutory requirement that interest netting is available only for overpayments and underpayments "by the same taxpayer." § 6621(d). In general, two taxpayers are the "same" if they have the same taxpayer identification number ("TIN"). *See Magma Power Co. v. United States*, 101 Fed. Cl. 562, 569 (2011). Occasionally, taxpayers with different TINs seek to benefit from interest netting, claiming that they should be treated as the "same" in particular circumstances. One such circumstance—when two separate taxpayers are involved in a corporate merger—has sparked litigation between taxpayers and the United States. This is one such case.

_____

[1] Unless otherwise indicated, all citations are to the Internal Revenue Code of 1986, 26 U.S.C., in effect during the years at issue.

Here the Bank claims that, "as a result of" an October 2013 merger of Merrill Lynch into the Bank, "the various overpayments and underpayments of BAC [and] Merrill Lynch" are "those of the same taxpayer within the meaning of the interest netting provisions of IRC § 6621(d)." (Dkt. 29-2 at 13.) In "support of that position," the Bank "relies on *Wells Fargo & Company v. United States*, 117 Fed. Cl. 30 (2014)" (*Wells Fargo I*), an opinion in a Court of Federal Claims case involving the merger of Wachovia into Wells Fargo. (*Id.*) Notably, the portion of that opinion on which the Bank appears to rely was *reversed* by the Federal Circuit and, if this Court were to follow the Federal Circuit's opinion here, much of the interest-netting relief the Bank now seeks would be barred.

In *Wells Fargo & Co. v. United States* (*Wells Fargo II*), 827 F.3d 1026 (Fed. Cir. 2016), the Federal Circuit addressed the effect of a corporate merger on the same-taxpayer analysis, holding that a merger could cause two taxpayers to be the "same," but *only* under certain circumstances. In one portion of the opinion (affirming the trial court), the Federal Circuit held that a "post-merger surviving entity that has absorbed the acquired corporation" is the "'same taxpayer' for purposes of § 6621(d)" as the "acquired corporation." *Id.* at 1042 (discussing "Situation Three").[2]

In another portion of the opinion (reversing the trial court), the Federal Circuit held that an acquiring corporation prior to a merger is *not* the "same" as the pre-merger corporation it acquired. *Id.* at 1035 (discussing "Situation One"). That is because "later changes in corporate

---

[2] The Department of Justice has advised the Bank's counsel that the United States is conceding that the Bank is entitled to a limited portion of the interest-netting relief claimed in the computations attached to the Third Amended Complaint, a partial concession that will be implemented when the parties address the computational issues in this case. The partial concession is for overlapping interest accruals corresponding to the fact pattern in which the Federal Circuit allowed interest-netting relief in *Wells Fargo II*.

2

structure" do not "retroactively change a taxpayer's status as to earlier payments." *Id.* at 1035.

Thus, *Wells Fargo II* held that, where overpayments and underpayments "were both made before

[a] merger," they were not by the "same taxpayer," even though "the two entities later merged."

*Id.* The following diagram depicts the Federal Circuit's holding, as applied to the merger of

Merrill Lynch into the Bank that is at issue here:



To resolve the parties' cross-motions for partial summary judgment, the Court must

decide whether the Federal Circuit's interpretation of the "by the same taxpayer" requirement in

*Wells Fargo II* was correct (as the government contends) or whether the trial court's

interpretation was correct (as the Bank contends). To facilitate resolution of the parties'

"disagree[ment] as to the application of the term 'same taxpayer' in section 6621(d)," the parties

"collaborate[d] to identify a limited number of 'test cases' involving particular periods of

overlapping overpayments and underpayments to address in cross-motions for partial summary

judgment." (Dkt. 60 at 2.) The parties agreed on two such "'test cases' to litigate the availability

of 'interest netting' under section 6621(d) of the Internal Revenue Code." (Dkt. 63 at 2.)

**Test Case One** involves the Bank's claim for a refund of underpayment interest for

BAC's 2005 tax year, based on the netting of underpayment interest payable for that tax year

against overpayment interest allowed in Merrill's 2005 tax year. (*Id.*) The Bank seeks interest-netting relief for the interest accruals between March 15, 2010 and June 30, 2014. (*Id.*)

**Test Case Two** involves the Bank's claim for a refund of underpayment interest for BAC's 2005 tax year, based on the netting of underpayment interest payable for that tax year against overpayment interest allowed in Merrill's 1999 tax year. (*Id.*) The Bank seeks interest-netting relief for interest accruals from March 15, 2006 through March 15, 2007, and from April 15, 2009 through August 26, 2009. (*Id.*)

The Court should disallow the Bank's claims for interest netting in both test cases because the underpayment of tax and overpayments of tax involved in the test cases preceded Merrill's October 2013 merger into the Bank. The underpayment for BAC's 2005 tax year arose on March 15, 2006, the deadline for timely payment of tax for that year and the first date on which BAC owed an unpaid balance. The relevant overpayment for Merrill's 1999 tax year arose on March 15, 2002, the effective date of an abatement of tax and the date on which Merrill's payments exceeded its liabilities for that tax year. And the relevant overpayment for Merrill's 2005 tax year arose on March 15, 2008, the effective date of an abatement of tax and the date on which Merrill's payments exceeded its liabilities for that tax year.[3] Because the overpayments by Merrill and the underpayment by the Bank occurred before the merger, and because "later changes in corporate structure" do not "retroactively change a taxpayer's status as to earlier payments" (*Wells Fargo II*, 827 F.3d at 1035), the overpayment and underpayments were not by the "same taxpayer," and interest-netting is unavailable.

---

[3] As explained below, to the extent that any other payments, credits, or abatements of tax might theoretically be relevant to the same-taxpayer inquiry, each of them occurred (or was effective as of a date) prior to October 2013, as well.

This Memorandum will first discuss general legal principles regarding claims for interest netting under § 6621(d). Afterwards, the Memorandum will include a Statement of Facts that discusses the specific test claims addressed by the parties' cross motions for partial summary judgment. The Memorandum will then present defendant's argument that the Bank is not entitled to interest-netting relief for either of the two test claims.

## II. LEGAL BACKGROUND REGARDING INTEREST NETTING

### A. Underpayment and overpayment interest under the Internal Revenue Code

**Underpayment interest.** "The IRS, like banks or any other creditor, charges interest on money it is owed over time. Thus, when a taxpayer underpays taxes for a certain tax period, the IRS charges interest on the amount of the deficiency." *Sunoco, Inc. v. Commissioner*, 663 F.3d 181, 186 (3d Cir. 2011). This type of interest is known as underpayment interest. Section 6601(a) provides:

> If any amount of tax . . . is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate . . . shall be paid for the period from such last date to the date paid.

Section 6151(a) defines the "last date prescribed for payment" as the "time and place fixed for filing the return (determined without regard to any extension of time for filing the return)," which for the years in question was generally March 15th of the following year for corporations filing a calendar-year tax return. § 6072(b) (2005); *see also* Treas. Reg. § 301.6601-1(a).

**Overpayment interest**. "[T]he IRS pays a taxpayer interest on any amount of taxes that a taxpayer pays that exceeds the actual tax liability for a given year. This . . . type of interest is known as 'overpayment interest' . . . ." *Sunoco*, 663 F.3d at 186. Section 6611(a) provides:

> Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate . . .

5

In general, overpayment interest begins to accrue on the first date when payments and credits in the account exceed liabilities, Treas. Reg. § 301.6611-1(b), and ceases to accrue, in the case of a refund, on a date determined by the IRS that precedes the date of a refund check by no more than thirty days, or, in the case of a credit transfer, on the due date of the amount against which the credit is taken. § 6611(b).

## B. The netting of underpayment interest and overpayment interest

Until 1986, interest generally accrued on underpayments and overpayments at the same rate. *See* § 6621 (1982). Since the Tax Reform Act of 1986, the Code has generally required corporations to pay interest on underpayments at a higher rate than the Code required the IRS to pay to corporations on overpayments. *Compare* § 6621(a)(1) *with* § 6621(a)(2). Because of the difference in rates, overlapping interest obligations between the IRS and a corporation would generate a net liability for the taxpayer, even if the taxpayer and the IRS owed each other identical amounts of tax.

Congress addressed that issue in 1998, when it added § 6621(d) to the Code. It provides:

> To the extent that, for any period, interest is payable under subchapter A [underpayment interest] and allowable under subchapter B [overpayment interest] on equivalent underpayments and overpayments by the same taxpayer of tax imposed by [Title 26 of the U.S. Code], the net rate of interest under this section on such amounts shall be zero for such period.

Under this provision, interest netting applies when the "same taxpayer" has overlapping interest accruals, during the effective dates of § 6621(d),[4] for which the taxpayer had allowable overpayment interest and payable underpayment interest.

---

[4] Interest netting under § 6621(d) applies to periods of interest accrual occurring on or after October 1, 1998. Rev. Proc. 2000-26, 2000-1 C.B. 1257, § 1. Under limited circumstances set forth in an uncodified special rule, interest netting may also be available for periods of interest accrual occurring before October 1, 1998. *See* Rev. Proc. 99-43, 1999-2 C.B. 579,

When applicable, interest netting equalizes the overpayment and underpayment interest rates on equivalent overpayments and underpayments during overlapping interest periods, so that the overpayment interest paid to the taxpayer equals the underpayment interest paid by the taxpayer. The taxpayer can receive the "net rate of interest . . . [of] zero" provided by § 6621(d) in one of two ways. The taxpayer may either receive a reduction of the underpayment-interest rate in the first tax period to match the rate allowed on the corresponding overpayments in the second tax period, or else request an increase of the overpayment-interest rate in the overpayment year to match the rate charged on the corresponding underpayments in the underpayment year.

House Report No. 105-364 (1997) provides an example of interest netting under § 6621(d). There, "a corporate taxpayer . . . had underpaid its 1999 taxes by $7,000," and "paid the 1999 underpayment, plus interest determined at the underpayment rate." *Id.* at 64. Later, an examination of the taxpayer's 1998 return determined that the "corporate taxpayer . . . overpaid its 1998 taxes by $5,000." *Id.* In "determining the amount of the refund owed to the taxpayer with regard to the 1998 overpayment," interest netting must be applied.

> For all periods in which the underpayment and overpayment run concurrently (*i.e.,* from the due date of the 1999 return until the underpayment was paid), the interest rate on the $5,000 underpayment and the $5,000 of the overpayment must be the same so that the net interest rate of zero applies. The interest rate on the remaining $2000 of the underpayment . . . would not be affected.

*Id.* (footnote omitted). The following diagram reflects the netting of interest in this example:

---

§ 1.01; IRS Restructuring and Reform Act of 1998, Pub. L. No. 104-206, § 3301(c)(2), 112 Stat. 685, 741 (1998), *amended by* Pub. L. No. 105-277, § 4002(d), 112 Stat. 2681, 2681-906 (1998).



In the example, the taxpayer receives interest on $5,000 at the overpayment rate both before March 15, 2000, and after it paid the $7,000 underpayment for the 1998 tax year. During the period that the interest accruals overlap, to achieve a net interest rate of zero, either: (1) interest on the $5,000 overpayment will be recomputed at the higher underpayment-interest rate, and the taxpayer would receive an additional allowance of overpayment interest measured by the difference between the overpayment interest it received on $5,000 and the underpayment interest it paid on $5,000, or (2) interest on $5,000 of the underpayment will be recomputed at the lower overpayment-interest rate, and the taxpayer would be refunded its previously paid underpayment interest measured by the difference between the underpayment interest it paid on $5,000 and the overpayment interest it received on $5,000.

## III.    STATEMENT OF FACTS

### A.    The Bank's interest-netting claims in this case

On June 16, 2015, the Bank filed an administrative claim with the Internal Revenue Service, seeking interest-netting relief in various tax years of the Bank itself and certain of its predecessors, including Merrill. (Third Amended Complaint, ¶ 27; Dkt. 29-2 – Dkt. 29-14.) Among other things, the claim sought interest-netting relief in BAC's 2005 tax year. (*Id.*) The Bank argued that, "as a result of" various mergers between the Bank and its predecessors, including the October 2013 merger with Merrill, "the various overpayments and underpayments

of BAC" and its predecessors (including Merrill) are "those of the same taxpayer within the meaning of the interest netting provisions of IRC § 6621(d)." (Dkt. 29-2 at 13.) The IRS denied that administrative claim, stating in part:

> [T]he taxpayers were not the same when their respective underpayments and overpayments were made. To be entitled to interest netting under section 6621(d), the taxpayer that underpaid the tax must be the same taxpayer that overpaid the tax at the time that these overpayments and underpayments are made. Corporations do not retroactively become the "same taxpayer" for purposes of IRC 6621(d) because of reorganizations subsequent to the tax years for which interest rate netting is sought among the taxpayers.

(Dkt. 29-23.) The Bank filed subsequent administrative claims seeking interest relief that are also subjects of this suit. (*See* Third Amended Complaint, ¶¶ 28-34.)

Exhibit G to the Third Amended Complaint (Dkt. 29-25 – Dkt. 29-27) includes computer-generated schedules that specify the precise relief that the Bank seeks in this case (and in the claims earlier severed from this case and transferred to the Court of Federal Claims). The beginning of Exhibit G consists of an "020" report, which identifies the total relief the Bank claims for each tax year. (*See* Dkt. No 29-25, at 3-8.) For each tax year listed on the 020 reports, Exhibit G includes a separate, lengthy "490 Activity Summary" report, which lists the specific interest adjustments the Bank requests. The interest-netting relief sought in Test Case One and Test Case Two appear on the 490 report for BAC's 2005 tax year [Appendix, Ex. 1]. (*See* Dkt. 29-26 at 300-320.)

For each recomputation that the Bank seeks, the 490 report identifies: (1) the tax periods, in addition to the period for which relief is sought, used in the netting computations; (2) the equivalent principal amounts on which the underpayment and overpayment interest accruals are proposed to be netted (or equalized); and (3) the starting and ending dates of each interest accrual

that the Bank proposed to be netted. For example, one of the proposed recomputations involved in Test Case Two appears on the first page of the 490 report, as follows:

| Date Start | Date Adj/End | Description | Susp/Equal |
|---|---|---|---|
| 03/15/2006 | 03/27/2006 | 1545 Equalize to GATT | $230,700,794.80 |
| | | XREF XX-XXXX0599 1120 Final use overpmt 199912 | |

That proposed recomputation seeks, for the period of 3/15/2006 through 3/27/2006, the netting of: (1) underpayment interest previously assessed and paid at the higher underpayment rate by BAC ("XX-XXX6609") in connection with its income-tax account ("1120") for the tax year ended 12/31/2005 ("2005/12") on an amount of $230,700,794.80, against (2) overpayment interest previously allowed at the lower "GATT"[5] overpayment rate to Merrill ("XX-XXX-0599") in connection with its income tax account ("1120") for the tax year ended 12/31/1999 ("199912"). (Dkt. 29-26 at 300.) Subsequent entries include additional proposed recomputations based on overpayments and underpayments of tax for the same two tax years. (*See id.*)

## B. The specifics of the test cases

**Test Case One** involves the Bank's claim for a refund of underpayment interest in BAC's 2005 tax year, based on the netting of underpayment interest payable for that tax year against overpayment interest allowed in Merrill's 2005 tax year. (Dkt. 63 at 2.) The specific proposed recomputations involved in Test Case One appear on pages ten through fifteen of the 490 report for BAC's 2005 tax year. (*See* Dkt. 29-26 at 309-314.) The Bank seeks interest-netting relief for interest accruals between March 15, 2010 and June 30, 2014. (Dkt. 63 at 2.)

---

[5] The GATT rate applies to interest accruals occurring after December 31, 1994, on overpayments of tax by a corporation in excess of $10,000. § 6621(a)(1). Congress enacted the rate in legislation implementing the Uruguay Round Agreements under the General Agreement on Tariffs and Trade. *See General Elec. Co. v. United States*, 56 Fed. Cl. 488, 490 (2003).

The underpayment at issue in Test Case One is the underpayment by the Bank in its 2005 tax year. The balance of the Bank's liability for that tax year changed from day to day as a result of assessments and abatements of tax and interest applied to that tax year, together with credits and payments that the Bank made against its liability for the year. Many of the transactions affecting the balance of the Bank's liability for that tax year are set forth in paragraphs 69 through 98 of the parties' Stipulation of Fact. The 490 report for that tax year shows that the Bank had an underpayment balance as of March 15, 2006, beginning in the amount of $220,700,794.80 and continuing with balances owed in various amounts until the balance was fully paid as of June 30, 2014. (*See* Dkt. 29-6 at 315-321.) In BAC's 2005 tax year, because the "amount of tax imposed" by the Internal Revenue Code had not been paid "on or before the last date prescribed for payment," underpayment interest accrued as of the last date for timely payment, or March 15, 2006. *See* § 6601(a), (b). Thus, pursuant to § 6601, the date of the underpayment in the Bank's 2005 tax year was March 15, 2006.

The overpayment at issue in Test Case One is an overpayment in Merrill in its 2005 tax year. The balance of Merrill's liability for that tax period changed from day to day as a result of assessments and abatements of tax and interest made for that tax year, together with credits and payments that Merrill made for the year. Many of the transactions affecting the balance of Merrill's liability for that tax year are set forth in paragraphs 46 through 68 of the parties' Stipulation of Fact (Dkt. 66). The 490 report for that tax year (Appendix, Ex. 2), shows that the relevant overpayment balance began on March 15, 2008, as a result of a tax abatement applied to Merrill's liability with that effective date (Stip. ¶ 62), and continuing through the end of the time frame covered by the 490 report. (*See* Dkt. 29-26 at 56-62.) Under the Internal Revenue Code, overpayment interest accrues beginning on "the date of the overpayment." § 6611(b)(1), (b)(2).

Because March 15, 2008 is the first date on which the relevant overpayment balance began to accrue overpayment interest, it is arguably the relevant date of the overpayment for the purpose of § 6611 and should be the relevant date of the overpayment for the purpose of § 6621(d).[6]

**Test Case Two** involves the Bank's claim for a refund of underpayment interest in BAC's 2005 tax year, based on the netting of underpayment interest payable for that tax year against overpayment interest allowed in Merrill's 1999 tax year. (Dkt. 63 at 2.) The specific proposed recomputations involved in Test Case Two appear on pages one through ten of the 490 report for BAC's 2005 tax year. (*See* Dkt. 29-26 at 300-309.) The Bank seeks interest-netting relief for interest accruals between March 15, 2006 through March 15, 2007, and between April 15, 2009 through August 26, 2009. (*Id.*)

The underpayment at issue in Test Case Two is the underpayment by the Bank in its 2005 tax year. As explained in the discussion of Test Case One above, pursuant to § 6601, the date of the underpayment in the Bank's 2005 tax year was March 15, 2006.

The overpayment at issue in Test Case Two is an overpayment by Merrill in its 1999 tax year. The balance of Merrill's liability for that tax period changed from day to day as a result of assessments and abatements of tax and interest made for that tax year, together with credits and payments that Merrill made against its liability for the year. Many of the transactions affecting the balance of Merrill's liability for that tax year are set forth in paragraphs 19 through 45 of the

---

[6] In both *Energy East* and *Wells Fargo II*, the parties did not dispute that the dates of the overpayments and underpayments preceded the dates of the transactions in question—the acquisition in *Energy East* and the merger in *Wells Fargo II*. For that reason, those opinions did not discuss how precisely to determine the dates of the overpayments on the facts of those cases, which it was unnecessary for the Federal Circuit there to address. This Court need not determine the precise overpayment date(s) here either, because any payments, credits, or abatements of tax in Merrill's 2005 year occurring after the genesis of the relevant overpayment balance also had effective dates that preceded the October 2013 merger. (*See* Stip. ¶ 63 (abatement effective March 15, 2009).)

parties' Stipulation of Fact. The 490 report for that tax year (Appendix, Ex. 3), shows that the relevant overpayment balance began on March 15, 2002, as a result of a tax abatement applied to Merrill's liability with that effective date (Stip. ¶ 32), and continuing through the end of the time frame covered by the 490 report. (*See* Dkt. 29-25 at 161-169.) Because March 15, 2002 is the first date on which the relevant overpayment balance began to accrue overpayment interest, it is arguably the relevant date of the overpayment for the purpose of § 6611 and should be the relevant date of the overpayment for the purpose of § 6621(d).[7]

### C. The merger transaction affecting the same-taxpayer analysis

The facts regarding the merger of Merrill Lynch into the Bank are undisputed. Bank of America acquired Merrill Lynch on January 1, 2009, and Merrill then became a wholly-owned subsidiary of the Bank. (Stip. ¶¶ 6-10.) Afterwards, on October 1, 2013, Merrill formally merged into the Bank, with the Bank continuing as the surviving corporation. (Stip. ¶¶ 11-12.) As the argument below will make clear, because the merger of Merrill into the Bank occurred *after* the date of the underpayment in the Bank's 2005 tax year and after the dates of the overpayments in Merrill's 2005 and 1999 tax years, the underpayment and overpayments were not "by the same taxpayer" under § 6621(d).

---

[7] As with Merrill's 2005 tax year, it is also unnecessary for this Court to determine the precise overpayment date(s) for Merrill's 1999 tax year, because any payments, credits, or abatements of tax in that tax year occurring after the genesis of the relevant overpayment balance also had effective dates that preceded the October 2013 merger. (*See* Stip. ¶¶ 26, 27 (payments or deposits made on July 2, 2004).)

## IV. ARGUMENT

### A. The overpayments in Merrill's 2005 and 1999 tax years and the underpayment in the Bank's 2005 tax year were not "by the same taxpayer," because Merrill and the Bank filed different tax returns under different taxpayer-identification numbers for each of those years.

The starting point of the analysis is the "text of the governing statute." *United States v. Muhammad*, 16 F.4th 126, 128–29 (4th Cir. 2021). "When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* (quoting *United States v. Wayda*, 966 F.3d 294, 303 (4th Cir. 2020)). Section 6621(d) expressly provides for interest netting only under specified circumstances, to the extent that "for any period, interest is payable . . . on equivalent underpayments and overpayments by the same taxpayer."

Section 7701 defines the term "taxpayer" as "any person subject to any internal revenue tax," and "person . . . to mean and include an individual, a trust, estate, partnership, association, company or corporation." However, the Code does not define the common adjective "same," nor does it define the phrase "same taxpayer." *See Wells Fargo II*, 827 F.3d at 1035 (recognizing that "the term 'same taxpayer' is not self-defining").

It is well established that statutory language should be given its "ordinary, contemporary, common meaning." *McAdams v. Robinson*, 26 F.4th 149, 156 (4th Cir. 2022). In "determining whether a word in a statute has a plain or common meaning," courts "customarily turn to dictionaries for help." *Blakely v. Wards*, 738 F.3d 607, 611 (4th Cir. 2013); *see also United States v. Leak*, 426 F. Supp. 3d 206, 213 (W.D.N.C. 2019) ("Courts frequently turn to dictionaries for help in determining a term's ordinary meaning.").

Dictionary definitions of the term "same" make clear that for two entities to be the "same taxpayer," a certain identity is required between them. Webster's defines "same" as "being one

14

without addition, change, or discontinuance" or "identical." Webster's Third New Int'l Dictionary at 2007 (1969). However, sameness may also be a flexible concept, and the dictionary definition of "same" can extend to entities that are "not different in relevant essentials." *Id.*; *see also* Merriam-Webster, "Same," https://www.merriam-webster.com/dictionary/same ("resembling in every relevant respect") (last visited August 19, 2022). In the context of interest netting, where tax accounts for different years are at issue, "same" cannot require absolute identity of all of a taxpayer's features. That is so because, from year to year, corporate taxpayers are rarely identical in all respects, and minor changes should not affect whether they are the "same" for interest-netting purposes. It is only where changes affect corporate taxpayers' "relevant essentials" that taxpayers should not be considered the "same" across the years.

When analyzing whether one "taxpayer" and another are the "same" under § 6621(d), the Court should consider those taxpayers' relevant essentials. The relevant essentials for the "sameness" inquiry under § 6621(d) are, most appropriately, provided by the Internal Revenue Code. Under § 11, "[a] tax is hereby imposed for each taxable year on the taxable income of every corporation." Thus, for "every" unique corporation, the Code computes a tax liability for "each taxable year." The Code further requires that "every corporation subject to taxation" must either file its own income-tax return (under § 6012(a)(2)) or be included on the consolidated income-tax return of a common parent (under § 1501). A taxpayer's relevant essentials, therefore, include the requirements (1) to file an income-tax return for a taxable period, and (2) to be subject to an income-tax liability for that same period. For that reason, two entities that file separate income-tax returns for the same taxable period, and for which the Code computes

and imposes discrete income-tax liabilities and affords separate procedural privileges and responsibilities, have different relevant essentials and cannot be the "same" taxpayer.[8]

For the calendar years of 1999 and 2005—the tax periods involved in Test Claim One and Test Claim Two—Merrill filed its own Forms 1120, Consolidated Federal Income Tax Returns, under its own TIN (taxpayer identification number) of 13-2740599. (Stip. ¶¶ 4, 19, 46 & Stip. Exs. 8, 10.) For the same calendar years of 1999 and 2005, the Bank filed its own Forms 1120, Consolidated Federal Income Tax Returns, under its own TIN of 56-0906609. (Stip. ¶¶ 1-2, 69 & Stip. Ex. 13.) The fact that the Bank and Merrill each filed its own separate tax return for each of these years shows that they cannot be the "same" for those tax years.

Moreover, the Code requires each separate taxpayer to be identified by its own unique TIN. Any person other than an individual (such as a corporation) that is required to furnish a TIN, must use an employer-identification number, or "EIN," for this purpose. Treas. Reg. § 301.6109-1(a)(1)(ii)(C). Section 6109(a)(1) requires corporations to include their TIN on every return, statement, or other document that they file:

> Any person required . . . to make a return, statement, or other document shall include in such return, statement, or other document such identifying number as may be prescribed for securing proper identification of such person.

---

[8] *Ford Motor Co. v. United States*, 908 F.3d 805, 809 (Fed. Cir. 2018), held that "to determine whether two taxpayers are the 'same' under § 6621(d)," courts should consider "whether background legal principles support treating them as such." One such principle is the fact that "two separate, unrelated corporations are different taxpayers." *Id.* "Because tax laws usually treat formally separate corporations as distinct taxable entities that must file their own returns, they will normally be different taxpayers under § 6621(d) as well." *Id.* Whether cast as "relevant essentials" or as "background legal principles," it is clear that two taxpayers that file separate income-tax returns for the same taxable period, and for which the Code computes and assesses discrete income-tax liabilities and affords separate procedural privileges and responsibilities, generally are not the "same."

When enacting § 6109, Congress stated: "Through the use of taxpayer account numbers and automatic data processing equipment the Internal Revenue Service hopes to develop a single file which would contain, in one place, information relative to all of the tax transactions involving a taxpayer." S. Rep. No. 87-1102 at 2 (1961). Congress explained that "*each* taxpayer would have a *single* file" for "the recording of this information." *Id.* (emphasis added). "The importance of the identification number is well documented." *Magma Power*, 101 Fed. Cl. at 569 (noting that "the key for identifying a single taxpayer is the taxpayer TIN"). Because the TIN identifies a particular taxpayer, it necessarily follows that if two entities do not share the same TIN, they should not be the "same taxpayer." Thus, *Magma Power* held that "there seems no better plain meaning of the term 'same taxpayer' than 'same taxpayer identification number.'" 101 Fed. Cl. at 569. Likewise, the Court of Federal Claims recently held that an individual was not the same taxpayer as a trust, based on the fact that he and the trust had different TINs. *Johnson v. United States*, 127 Fed. Cl. 529, 536 (2016) ("That plaintiff is not the same party identified in the IRS notice is borne out both by common sense and the fact that the taxpayer identification number on the IRS notice is not the same as the social security number plaintiff provided on his refund request."), *reconsideration denied*, 127 Fed. Cl. 661 (2016).

As explained, during each of the years at issue, the Bank had its own TIN of 56-0906609, and Merrill had a different TIN of 13-2740599. (Stip. ¶¶ 1-2, 4.) Because the two entities had different TINs during 1999 and 2005, the Bank and Merrill cannot be the "same taxpayer."

There are two very limited exceptions to the general rule that interest netting applies only to overpayments and underpayments made by a single entity with a single TIN, neither of which applies here. One exception, set forth in the legislative history of § 6621(d), allows interest netting "[w]here interest is payable and allowable on an equivalent amount of underpayment and

overpayment that is attributable to a taxpayer's interest in a pass-thru entity (e.g., a partnership)." H.R. Rep. No. 105-599 at 257 (1998) (Conf. Rep.). Because the Bank and Merrill were not pass-thru entities, that execption is irrelevant here.

The other limited exception comes from *Wells Fargo II*, 827 F.3d at 1042, which held that "an acquired corporation that makes an overpayment before a merger is the 'same taxpayer' for the purposes of § 6621(d) as the post-merger surviving entity that has absorbed the acquired corporation." In reaching that holding, the Federal Circuit looked to "a background of merger law [to] shed[] some light on the meaning of 'same taxpayer' in § 6621(d)" in the context of a merger. *Id.* at 1038. *Wells Fargo II* recognized the principle that a statutory merger mixes and combines the personalities of the predecessor companies into the survivor, causing the survivor to be the same as each of its predecessors. *Id.* at 1038-39. That exception does not apply here, where neither the overpayments nor underpayment in question were made by the post-merger surviving entity, *i.e.*, in a BAC tax year occurring *after* October 1, 2013.

**B.    The 2013 merger of Merrill into the Bank did not make those two taxpayers the "same" for overpayments and underpayments occurring beforehand.**

As explained, based primarily on its analysis of merger law, *Wells Fargo II* held that two corporations could be the "same taxpayer," even though having different TINs, where one corporation was "the post-merger surviving entity" and the other was "the acquired corporation." *Id.* at 1042. The Federal Circuit also held, however, that an acquiring entity prior to a merger is *not* the "same" as the pre-merger entity it acquired. *Id.* at 1035. The Federal Circuit held that "merger law" did not "operate[] to retroactively make the two separate corporations the same under the statute." *Id.* Applying its earlier opinion in *Energy East Corp. v United States*, 645 F.3d 1358 (Fed. Cir. 2011), the Federal Circuit held that § 6621(d) imposes a temporal requirement, under which courts must examine the timing of the overpayments and

underpayments to evaluate whether they were "by the same taxpayer." *Wells Fargo II*, 827 F.3d. at 1034-35. Entities when unaffiliated are not the same taxpayer; it does not matter that a later transaction might make them the same taxpayer at some time in the future. *See* 8 Del. Code Ann. § 259(a) (providing that surviving corporation inherits the rights and obligations of its predecessors as of the date of merger).

In *Energy East*, the taxpayer sought to net its own underpayment interest against interest on overpayments made by two companies it later acquired. After acquisition, those two companies became part of the taxpayer's affiliated group of corporations, which filed a consolidated tax return. All of the underpayments and overpayments were made, however, prior to the acquisition. Rejecting Energy East's arguments that it was the "same taxpayer" as its subsidiaries because they were part of the same consolidated group when some of the outstanding overpayments and underpayment overlapped or, alternatively, when the netting claim was asserted, the Federal Circuit held that § 6621(d) required comparing the two taxpayers on the dates the overpayments and underpayment were made, not later. 645 F.3d at 1361.

The Federal Circuit emphasized that its *Energy East* holding rested on the statutory language, which it found unambiguous. *Id.* at 1361-62. The Court applied the "last antecedent rule," under which "a limiting clause or phrase 'should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *Id.* (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). The Court concluded that, because the phrase "'by the same taxpayer' immediately follows and therefore refers to 'equivalent overpayments and underpayments,'" "the statute provides an *identified* point in time at which the taxpayer must be the same, i.e., when the overpayments and underpayments are made." *Id.* (emphasis in opinion) (quoting § 6621(d)). The Court rejected the taxpayer's contentions that the statute provided "no 'point in history' that

taxpayers must be the 'same' prior to filing a netting claim," and that it was sufficient if the entities were the "same taxpayer" during some of the time in which interest payable on the respective overpayments and underpayments overlapped, or at the time the netting claim was asserted, because those contentions "ignore[d] the plain language of the statute." *Id.* at 1361-63.

The Federal Circuit opined that the taxpayer's arguments would require reading the statute as providing: "'[t]o the extent that, for any period, interest is payable . . . by the same taxpayer,' interest netting is allowed on equivalent overpayments and underpayments," but that this is not what the statute provides. *Id.* at 1362-63. The Federal Circuit made clear that § 6621(d)'s statutory language is not properly read to permit netting based on the taxpayers' liability for interest. *Id.* (emphasizing that the phrase "by the same taxpayer" modifies "underpayments and overpayments," not the phrase "for any period, interest is payable"). The fact that liability for the underpayment of tax and interest thereon, and the right to a refund of the overpayment interest, may wind up in the hands of the same taxpayer is insufficient to allow interest netting. *Id.* at 1362.

This Court should follow *Energy East* and *Wells Fargo II* in this case.[9] Notably, the Fourth Circuit routinely applies the last-antecedent rule on which the Federal Circuit's holding in *Energy East* was based. *E.g., United States v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019),

---

[9] Generally, taxpayers file interest-netting suits in the Court of Federal Claims, whose judgments are appealed to the Federal Circuit. Taxpayers with interest-netting claims typically choose that forum because most interest-netting cases include claims for overpayment interest and because the Court of Federal Claims has exclusive jurisdiction over such claims. *See Bank of America Corp. v. United States*, 964 F.3d 1099, 1109 (Fed. Cir. 2020). As a result, the Court of Federal Claims and Federal Circuit have developed a thorough body of interest-netting case law over the years, allowing interest-netting claims in certain circumstances and disallowing them in others. While those authorities are "persuasive, though not dispositive," the Court should follow their lead here, both because they are well reasoned and because "'[u]niformity among Circuits is especially important in tax cases to ensure equal and certain administration of the tax system.'" *Fang Lin Ai v. United States*, 809 F.3d 503, 507 (9th Cir. 2015) (quoting *Hill v Commissioner*, 204 F.3d 1214, 1217 (9th Cir. 2000)).

*as amended* (Nov. 21, 2019) ("A general rule of statutory interpretation is that modifiers attach to the closest noun; courts should not interpret statutes in such a way as to 'divorce a noun from the modifier next to it without some extraordinary reason.'").[10]

Here, Merrill merged into the Bank on October 1, 2013. However, the underpayment and overpayments on which the interest-netting claims in Test Case One and Test Case Two are based all occurred well before that merger date. Under *Wells Fargo II*, the merger of Merrill into the Bank did not retroactively change the identities of those two taxpayers with respect to the overpayment and underpayments they made previously.

### C. To the extent that the Court of Federal Claims held otherwise in *Wells Fargo I*, it was wrong.

As explained, the Bank based its interest-netting claims on a portion of the Court of Federal Claims opinion in *Wells Fargo I*, 111 Fed. Cl. 27 (2014), that the Federal Circuit later reversed. (Dkt. 29-2 at 13.) That portion of the trial court opinion was erroneous, as the Federal Circuit properly held.

In *Wells Fargo I*, 111 Fed. Cl. at 35, the trial court reasoned that the pre-merger acquiring entity and the pre-merger acquired entity were the "same taxpayer" under § 6621(d), because

---

[10] If the Court were to decline to apply the holdings of *Energy East* and *Wells Fargo II* that (based on the text of § 6621(d)) the same-taxpayer inquiry compares the taxpayers on the dates the overpayments and underpayments were made, the Court would have to use an alternative temporal standard. In that case, it would be appropriate for the Court to compare the overpayment taxpayer and underpayment taxpayer as of the end of the tax years for which the overpayment and underpayment arose. The Internal Revenue Code generally computes tax "on the basis of the taxpayer's taxable year." § 441. And the Code is replete with situations where various taxpayer statuses are determined based on facts occurring within the four corners of the tax years themselves. *E.g.*, § 816 (taxpayer's qualification as a life insurance company determined based on its business "during the taxable year"); § 1362 (revocation of Subchapter S status occurs when corporation ceases to qualify and is effective on such date); § 7703 (marital status generally determined as of the close of taxable year). While the United States strongly believes that the Court should follow *Energy East* and *Wells Fargo II* here, if the Court were to consider an alternative, the end of the taxable year would be the most appropriate alternative.

"the surviving corporation is liable retroactively for the tax payments of its predecessors" and because the surviving corporation is also entitled to any refund due from tax overpayments made by the acquired corporation if the government has not yet paid the refund." The trial court's focus on the merger's effect on liabilities for pre-merger overpayments and underpayments was misplaced. Both *Wells Fargo II* and *Energy East* make clear that, in determining whether two entities are the same taxpayer, courts compare "the entity that made the underpayment at the time of the underpayment" with "the entity who made the overpayment at the time of the overpayment." *Wells Fargo II*, 827 F.3d at 1034 (citing *Energy East*, 645 F.3d at 1361). "It is the *identity* of the corporation *at the time of the payments* that matters." *Id.* at 1035 (citing *Energy East*, 645 F.3d at 1363 (some emphasis added)). The fact that a different corporation may later be responsible to pay a tax underpayment or a different corporation might have a right to recover a tax overpayment does not affect the same-taxpayer issue. The text of § 6621(d) is not properly read to permit interest netting based on post-merger liabilities for overpayment and underpayment interest, because the statute does not provide: "'[t]o the extent that, for any period, interest is payable . . . by the same taxpayer,' interest netting is allowed on equivalent overpayments and underpayments.'" *Energy East*, 645 F.3d at 1362-63.

*Wells Fargo I*, 111 Fed. Cl. at 35, also incorrectly reasoned that merger "law treats the acquired corporation as though it had always been part of the surviving entity," so that the acquired, acquiring, and suriving corporations are all one, even retroactively, making irrelevant their status as separate taxpayers when underpayments and overpayments were made. "A merger of two corporations contemplates that one corporation will be absorbed by the other and will cease to exist while the absorbing corporation remains." *Bowers v. Andrew Weir Ship., Ltd.*, 27 F.3d 800, 806 (2d Cir. 1994) (quoting *Engel v. Teleprompter Corp.*, 703 F.2d 127, 131

(5th Cir. 1983)). Thus, before a merger, two separate corporate entities exist (each of which is a separate taxpayer), and thereafter "the acquired firm disappears as a distinct legal entity." *Frandsen v. Jensen-Sundquist Agency, Inc.*, 802 F.2d 941, 944 (7th Cir. 1986). These merger principles establish that the acquired corporation—a "separate entity" prior to the merger—ceases to exist, and only certain of its attributes are carried on by the surviving corporation, which acquires its assets and assumes its liabilities. That certain attributes and assets are transferred and liabilities are assumed does not magically erase the prior existence of the acquired corporation and retroactively make it the "same" as the merger survivor before the merger took effect.

Although the liabilities that the merger survivor assumes may have arisen in the past, the absorption of one entity's business by the other, and the accompanying assumption of liabilities, begins when the merger occurs. Indeed, the Delaware merger statute that is relevant here describes the surviving corporation's acquisition of the acquired corporation's rights, property, and liabilities as forward-looking, to the time after the merger. *See* 8 Del. Code Ann. § 259(a) (repeatedly using the future-tense construction "shall" in describing the rights and obligations of the constituent corporations that "shall be" vested in or assumed by the surviving corporation). The principle that the survivor of a merger inherits the assets and liabilities of its predecessors neither erases the acquired entity's prior separate existence, nor makes the acquired entity the "same" for all purposes as the survivor of a merger.

The fact that one person or entity is the successor to another is distinct from the two being the same. *See* Black's Law Dictionary at 1569 (9th ed. 2009) (defining "successor" as "a person who succeeds to the office, rights, responsibilities, or place of *another*; one who replaces or follows a predecessor" or "[a] corporation that through amalgamation, consolidation, or other

assumption of interests is vested with the rights and duties of an earlier corporation") (emphasis added). The fact that one entity may be legally responsible for another's liability does not mean that the two are necessarily identical. There are many situations where a person or entity must pay the liabilities of another, yet the two are not considered the same. For example, an insurer may be contractually responsible for the liabilities of an insured, but the two are not otherwise the same. Or a daughter, as the administrator and sole beneficiary of her deceased father's estate, may inherit her father's assets, subject to his liabilities. But the daughter and father are not one and the same. Likewise, the fact that a surviving corporation following a merger may inherit its predecessors' liabilities does not mean that the two predecessor corporations are the "same" for interest-netting purposes. If they were, there would be no need for any discussion of the surviving entities' rights and obligations as "successors."

Finally, *Wells Fargo I*, 119 Fed. Cl. at 38, improperly relied on a non-authoritative IRS document to suggest that the same-taxpayer requirement could be satisfied where an entity was responsible to pay an underpayment and entitled to receive an overpayment. *See* Field Service Advice 200212028, 2002 FSA LEXIS 4 (Jan. 16, 2002). Field Service Advice, like other informal IRS determinations, reflects the views of individual IRS attorneys at the time they are written and do not reflect deliberative positions of the agency itself. Pursuant to § 6110(k)(3), such informal determinations "may not be used or cited in any precedential way" and "may not be used to support, in any fashion, an argument that one interpretation of the Code is more authoritative than another." *Vons v. United States*, 51 Fed. Cl. 1, 12 (2001). The 2002 Advice does not reflect a deliberative position of the agency, it does not reflect the current IRS view on when the two taxpayers are the "same" under § 6621(d), nor is it consistent with the case law that developed after its issuance. As explained, both *Energy East* and *Wells Fargo II* make clear

that the same-taxpayer inquiry focuses on the identity of the entities who made the overpayments and underpayments, rather than who may be responsible to pay an underpayment or who may be entitled to receive an overpayment.

## V.    CONCLUSION

For the reasons stated above, defendant respectfully asks the Court to grant its motion for partial summary judgment and hold that the Bank is not entitled to interest-netting relief in Test Case One and Test Case Two.

Dated: August 19, 2022                     Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

DENA J. KING
United States Attorney

*/s/ Jason Bergmann*
JASON BERGMANN
STEPHANIE SASARAK
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
JB Telephone: (202) 616-3425
SS Telephone: (202) 307-2089
Fax: (202) 514-9440
JB Email: jason.bergmann@usdoj.gov
SS Email: stephanie.a.sasarak@usdoj.gov