UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00546-RJC-DSC

| BANK OF AMERICA CORPORATION, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on cross-motions for partial summary judgment filed by Bank of America and the United States (Doc. Nos. 67, 68). Those motions concern interest imposed on tax obligations under the Internal Revenue Code.

When a taxpayer owes tax to the government, the Code requires the taxpayer to pay interest on the outstanding tax. 26 U.S.C. § 6601(a). This is called "underpayment interest." When the government owes money to a taxpayer, the government must also pay interest on the amount due, *id.* § 6611(a), though the government pays interest to a corporate taxpayer at a lower rate, *id.* § 6621(a). This is called "overpayment interest." Sometimes, a taxpayer and the government owe equivalent amounts to each other. In this situation, the taxpayer would owe no net tax. Yet because a corporate taxpayer's interest rate exceeds the government's, a corporate taxpayer would still owe interest to the government.

26 U.S.C. § 6621(d) addresses such a period of mutual indebtedness. Under § 6621(d), when "underpayments and overpayments by the same taxpayer" offset each other, no interest is due: the net interest rate is zero while the offset lasts. Nullifying the interest rate in this way is called "interest netting."

This case presents a question of statutory interpretation: after a corporation with preexisting overpayments merges into a corporation with a preexisting underpayment, can the surviving corporation net those overpayments against its underpayment? As explained below, it cannot. Interest netting is available under § 6621(d) only when underpayments and overpayments are made "by the same taxpayer." Because two corporations are separate taxpayers before they merge, their premerger underpayments and overpayments were not made by the same taxpayer, so the corporation that survives the merger cannot use the payments to net its interest under § 6621(d).

For this reason, as elaborated below, the United States' Motion for Partial Summary Judgment (Doc. No. 68) is **GRANTED**, and Bank of America's Motion for Partial Summary Judgment (Doc. No. 67) is **DENIED**.

I.     **FACTUAL BACKGROUND**

Bank of America alleges that the IRS wrongly declined to net the bank's interest under 26 U.S.C. § 6621(d), resulting in improper interest charges. Pl.'s Mot. Part. Summ. J. 1–2, Doc. No. 67. Specifically, the bank, which survived a merger with Merrill Lynch in 2013, Stip. ¶ 11, Doc. No. 66, argues that it should be able to net two overpayments made by Merrill against its own underpayment, Pl.'s Mot. Part. Summ. J. 2, 12–13. The IRS maintains that the bank is unable to net Merrill's overpayments under § 6621(d) because, when those overpayments were made, Merrill and the bank were two different corporations and thus two different taxpayers. Def.'s Mot. Part. Summ. J. 4, Doc. No. 69.

Since this case concerns the tax implications of multiple transactions, the parties narrowed the issues to two test cases. Certif. Init. Att'y Conf. 2, Doc. No. 60; Mot. Summ. J. Briefing Sched. 2, Doc. No. 63. Resolving those test cases via cross-motions for partial summary judgment will resolve the rest of the parties' dispute. Certif. Init. Att'y Conf. 2; Pl.'s Mot. Part. Summ. J. 6; Def.'s Mot. Part. Summ. J. 3. Both test cases involve the same underpayment by Bank of America, but

they involve two different overpayments by Merrill.

### A. Test Case 1

In Test Case 1, Bank of America's underpayment tax year was 2005. Mot. Summ. J. Briefing Sched. 2. Merrill's overpayment tax year was also 2005, and the payments overlapped from March 15, 2010 until June 30, 2014. *Id.*

### B. Test Case 2

In Test Case 2, Bank of America's underpayment tax year was, again, 2005. Mot. Summ. J. Briefing Sched. 2. Merrill's overpayment tax year was 1999, and the payments overlapped from (i) March 15, 2006 through March 15, 2007 and (ii) April 15, 2009 through August 26, 2009. *Id.*

## II. DISCUSSION

As explained above, the two test cases present a straightforward question of law: whether, under 26 U.S.C. § 6621(d), a corporation that survived a merger can net the acquired corporation's premerger overpayments against the surviving corporation's premerger underpayment. The answer to that question is found in the text of § 6621(d), which allows interest netting only when there are "underpayments and overpayments by the same taxpayer."[1]

In "all cases involving statutory interpretation," courts "begin" with "the text of the governing statute." *United States v. Muhammad*, 16 F.4th 126, 128 (4th Cir. 2021) (citing *Snyder's-Lance, Inc. v. Frito-Lay N. Am., Inc.*, 991 F.3d 512, 516 (4th Cir. 2021)). When statutory text is "plain," the "sole function of the courts—at least where the disposition required by the text

---

[1] The parties stipulated to the relevant facts, Doc. No. 66, and their cross-motions for partial summary judgment present no genuine disputes of material fact, Certif. Init. Att'y Conf. 2; *see* Pl.'s Reply 4, Doc. No. 76 ("The parties agree on all the material facts."). Accordingly, the Court must only determine whether interest netting is allowed in the two test cases as a matter of law. *See* Fed. R. Civ. P. 56(a) (stating that a court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

3

is not absurd—is to enforce it according to its terms." *Id.* (quoting *United States v. Wayda*, 966 F.3d 294, 303 (4th Cir. 2020)). In interpreting a statute, the text is given its "ordinary, contemporary, common meaning." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)).

> In full, § 6621(d) states:
>
> Elimination of interest on overlapping periods of tax overpayments and underpayments.
>
> To the extent that, for any period, interest is payable under subchapter A [underpayment interest] and allowable under subchapter B [overpayment interest] on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

26 U.S.C. § 6621(d).

The statute allows interest netting only when there are "underpayments and overpayments by the same taxpayer." *Id.* As explained by the Federal Circuit, that "plain language" has a temporal element: "the statute provides an *identified* point in time at which the taxpayer must be the same, i.e., when the overpayments and underpayments are made." *Energy E. Corp. v. United States*, 645 F.3d 1358, 1361 (Fed. Cir. 2011); *see also Wells Fargo & Co. v. United States*, 827 F.3d 1026, 1035 (Fed. Cir. 2016) ("[I]t is the identity of the corporation *at the time of the payments* that matters.").

At the time of Merrill's overpayments and Bank of America's underpayment, the two were different corporations and different taxpayers.[2] The payment dates in both test cases precede the

---

[2] Underpayment interest begins to accrue on the "last date prescribed for [the tax's] payment." 26 U.S.C. § 6601(a), (b). The last date prescribed for the payment of Bank of America's 2005 taxes was March 15, 2006. Therefore, the bank's underpayment was made on that date. *See* Bank of America's 490 Report at 315, Doc. No. 29-26 (showing that the bank made an underpayment as of March 15, 2006); Stip. ¶ 91, Doc. No. 66 (explaining that a tax assessment recognized that the bank made an underpayment as of March 15, 2006). Overpayment interest begins to accrue

4

corporations' merger in 2013. When "the payments were . . . made before [a] merger," then "the payments were made by two separate corporations" that were not the "same taxpayer." *Wells Fargo*, 827 F.3d at 1034–35; *see also Ford Motor Co. v. United States*, 908 F.3d 805 (Fed. Cir. 2018) ("[T]here is no dispute that two separate, unrelated corporations are different taxpayers. . . . Because tax laws usually treat formally separate corporations as distinct taxable entities that must file their own returns, they will normally be different taxpayers under § 6621(d) as well."). "[L]ater changes in corporate structure" cannot "retroactively change a taxpayer's status as to earlier payments." *Wells Fargo*, 827 F.3d at 1035. And the fact that "the two entities later merged does not change the fact that they were separate at the time of the original payments." *Id.*

To provide further support for the Federal Circuit's interpretation of § 6621(d), the government cites dictionary definitions of the word "by." Def.'s Resp. 9, Doc. No. 74; *see* 26 U.S.C. § 6621(d) (allowing interest netting only when there are "underpayments and overpayments *by* the same taxpayer" (emphasis added)). According to the government's definition, "by" means "through the agency, means, instrumentality, or causation of." *The Oxford American*

---

"from the date of the overpayment," 26 U.S.C. § 6611(b)(1), (2), which is the first date when a taxpayer's payments and credits exceed the taxpayer's liabilities, Treas. Reg. § 301.6611-1(b). The first date on which Merrill's payments exceeded its liabilities for its 2005 tax year was March 15, 2008. *See* Bank of America's 490 Report at 56, Doc. No. 29-26 (showing that Merrill made an overpayment as of March 15, 2008); Stip. ¶ 62 (explaining that a tax abatement recognized that Merrill made an overpayment as of March 15, 2008). So that is the date of Merrill's overpayment for its 2005 tax year. The first date on which Merrill's payments exceeded its liabilities for its 1999 tax year was March 15, 2002. *See* Bank of America's 490 Report at 161, Doc. No. 29-25 (showing that Merrill made an overpayment as of March 15, 2002); Stip. ¶ 32 (explaining that a tax abatement recognized that Merrill made an overpayment as of March 15, 2002). So that is the date of Merrill's overpayment for its 1999 tax year.

Bank of America argues that the dates of the underpayment and overpayments are the dates on which the IRS made later adjustments that recognized the existence of the underpayment and overpayments. Pl.'s Resp. 9–10, Doc. No. 72. But the IRS's later adjustments only *recognized* the fact that the underpayment and overpayments had been made on earlier dates.

5

*Dictionary and Language Guide* 127 (1999); *see also id.* (providing the examples "bought by a millionaire" and "by proxy"); *Webster's Ninth New Collegiate Dictionary* 192 (1983) (defining "by" as "through the agency or instrumentality of"); Def.'s Resp. 9 (quoting these dictionaries). But Bank of America, citing other definitions of the word "by,"[3] argues that "[t]he phrase 'by the same taxpayer' does not impose a temporal limitation: it means that the under- and overpayments must be 'concerning' or 'with respect to' the same taxpayer." Pl.'s Reply 13, Doc. No. 76; *see Oxford American Dictionary*, *supra* (alternatively defining "by" as "concerning" and "in respect of," as in "all right by me"); *Webster's*, *supra* (alternatively defining "by" as "with respect to"). Since the bank, as the surviving corporation, is now both liable for any underpayments previously made by Merrill and eligible to receive refunds for Merrill's past overpayments, the bank argues that the same-taxpayer requirement is satisfied. *See* Pl.'s Reply 3 ("[T]he word 'by' can also mean 'concerning' or 'with respect to.' And both overpayments owed to and underpayments owed by a taxpayer are certainly 'concerning' or 'with respect to' that taxpayer.").

However, Bank of America concedes that the interpretation adopted by the Federal Circuit and advanced by the government here would be correct if the statute contained the word "made" before "by the same taxpayer." *See* Pl.'s Reply 3 ("[The government's] argument makes sense only if you add 'made' to the statute: 'equivalent underpayments and overpayments [made] by the same taxpayer.'" (second alteration in original)). But "the most natural meaning" of § 6621(d) *is* that the same taxpayer *made* the underpayments and overpayments. *Patel v. Garland*, 142 S. Ct. 1614, 1623 (2022). Congress conveyed that meaning with the words it chose. The presence of the verb "made" is understood; it was left out merely by means of a grammatical ellipsis.

---

[3] One dictionary cited by the parties offers thirteen different definitions of "by." *See The Oxford American Dictionary and Language Guide* 127 (1999). The other dictionary cited by the parties offers seventeen. *See Webster's Ninth New Collegiate Dictionary* 192 (1983).

6

"A grammatical ellipsis (sometimes called an *omission*) occurs when part of a clause is left understood and the reader or listener is able to supply the missing words." Bryan A. Garner, *The Chicago Guide to Grammar, Usage, and Punctuation* 167 (2016); *see also* Sylvia Chalker & Edmund Weiner, *The Oxford Dictionary of English Grammar* 131 (1998) (defining "ellipsis" as the "[o]mission of a word or words from speech or writing that can be recovered by the hearer or reader from contextual clues").[4] In an elliptical clause, "some of the words have been omitted as being understood." Bryan A. Garner, *Garner's Modern English Usage* 995 (4th ed. 2016). Ellipsis is "an important feature of the language," and "in ordinary declarative or narrative prose ellipsis is normal." H.W. Fowler, *The New Fowler's Modern English Usage* 244–45 (R.W. Burchfield ed., 3d ed. 1996). Even "[i]n more formal speech and writing, words are often grammatically recoverable from the text." Chalker & Weiner, *supra*. Legal writers frequently use ellipsis,[5] which

---

[4] *See also* Bryan A. Garner, *Garner's Modern English Usage* 1002 (4th ed. 2016) (explaining that, when a writer or speaker uses ellipsis, "[t]he reader or listener is expected to supply the full form"); Michael McCarthy, *Discourse Analysis for Language Teachers* 43 (1991) ("Ellipsis is the omission of elements normally required by the grammar which the speaker/writer assumes are obvious from the context and therefore need not be raised."); Morton S. Freeman, *The Grammatical Lawyer* 204 (1979) (providing examples of "elliptical sentences" and stating that "[t]he omitted words are clearly implied").

[5] Bryan Garner, a grammarian, lexicographer, and lawyer, has identified numerous ellipses that are commonly used in legal writing. *See, e.g.*, Bryan A. Garner, *Garner's Dictionary of Legal Usage* 6 (3d ed. 2009) ("*Above* is an acceptable ellipsis for *above-mentioned* . . . ."); *id.* at 36 ("The practice of writing 'The trial court was *affirmed*' is informally an acceptable ellipsis for 'The trial court's judgment was *affirmed*' . . . ."); *id.* at 40 ("In a few phrases, *agreed* suffices as an idiomatic ellipsis for *agreed-upon*, as in *agreed verdict* and *agreed judgment*."); *id.* at 54 ("*Amicus* is sometimes even used as an ellipsis for *amicus brief* . . . ."); *id.* at 95 ("*Employee at will* is an ellipsis for *employee at [the employer's] will*." (alteration in original)); *id.* at 106 ("*Below*, like *above*, is frequently used as an ellipsis for *below-mentioned*."); *id.* at 278 (explaining that "*direct* is often used as an ellipsis for *direct examination* . . . ."); *id.* at 341 (explaining that "*exempt* appears commonly in the U.S. as an ellipsis for *tax-exempt*."); *id.* at 361 (explaining that "*file* is often used as an ellipsis for *file suit* . . . ."); *id.* at 462 ("Sometimes . . . *in re* is shortened to *re*, the ablative inflection of the noun *res*; the ellipsis carries the same meaning as *in re*."); *id.* at 822 (describing "*[s]idebar* as an [e]llipsis," and explaining that "[t]he word *sidebar* is often used in [American English] as a shortening of *sidebar conference*"); *id.* at 887 ("[I]n any number of constructions it

7

has deep historical roots and has been recognized by the Supreme Court. *See United States v. Howell*, 78 U.S. 432, 436 (1870) (construing a statute by "mentally supplying the ellipsis which is in general use in conversation or in writing in similar cases," and explaining that "the mind supplies the ellipsis which good usage allows"); *United States v. Falkenhainer*, 21 F. 624, 627 (C.C.E.D. Mo. 1884) (describing the "omission" of a conjunction "by way of ellipsis" as "a very common thing" in statutes).

Recognizing the ellipsis in § 6621(d) gives the text its "most natural meaning." *Patel*, 142 S. Ct. at 1623; *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 140–41 (2012) (explaining that, under the "grammar canon" of statutory interpretation, "[w]ords are to be given the meaning that proper grammar and usage would assign them"). After all, no observation about taxpayers is more natural than that they *make* tax payments.

Other sections of the Code confirm that Congress omitted "made" in § 6621(d) merely by ellipsis. *See Star Athletica*, 580 U.S. at 414 (stating that courts "look to the provisions of the whole law" to determine a particular section's meaning); *C.I.R. v. Keystone Consol. Indus, Inc.*, 508 U.S. 152, 159 (1993) ("[T]he Code must be given as great an internal symmetry and consistency as its words permit." (quoting *Comm'r v. Lester*, 366 U.S. 299, 304 (1961))). Other sections use "payment by" to mean "payment *made* by." For example, one section describes a person's "method of payment," and it mentions "payment by credit card, debit card, or charge card." 26 U.S.C. § 6311(b). The same section later refers to "payment *made* by credit card or debit card." *Id.* § 6311(d)(3)(E) (emphasis added). Further, the section must refer to a payment *made* by a card because, if the payment only *concerned* a card, then the card would not have been used as a

---

is perfectly permissible, and even preferred, to omit *that* by ellipsis . . . ."); *id.* at 887–88 (explaining that it is "often useful" to use the word *that* "[a]s an [e]llipsis for *the fact that*").

"method of payment." *Id.* § 6311(b); *see also id.* § 6311(d)(3)(A) (mentioning "payment by use of the credit card"), (C) (mentioning "payment by use of the debit card"). Another section employs the heading "[r]eturn and payment by governmental employer" and then states that a return of funds "may be *made* by any officer or employee" of a governmental employer. *Id.* § 3126 (emphasis added).[6] A campaign-finance provision defines "contribution" as, in part, "the payment by any person other than a candidate, or his authorized committee." *Id.* § 9032(4)(D). It is clear that the payment is *made* by a person "other than a candidate" or "his authorized committee" because, according to other language in the section, the payment *concerns*, or is made *with respect to*, something else: "the personal services of another person which are rendered to the candidate or committee without charge." *Id.* And in a nearby subsection, the provision supplies another definition of "contribution": "anything of value, the *payment* of which was *made*" at a certain time and for a particular purpose. *Id.* § 9032(4)(A) (emphasis added). As a last example, the Code describes "[p]ayment by electronic fund transfer." *Id.* § 5703(b)(3). That section clarifies that a person may "*pay* [tobacco-related] taxes during the succeeding calendar year *by* electronic fund transfer." *Id.* (emphasis added). It also mentions "payments not required to be *made* by electronic funds transfer." *Id.* § 5703(b)(2)(D)(iii) (emphasis added). Moreover, that the payment is *made* by an electronic fund transfer—and does not *concern* an electronic fund transfer—is further confirmed by the statutory definition of "electronic fund transfer": "The term . . . means any *transfer of funds* . . . which is *initiated through* an electronic terminal . . . ." *Id.* § 5061(e)(2) (emphasis added).

Thus, accounting for the ellipsis in § 6621(d), considering the Code as a whole, and giving

---

[6] *See Yates v. United States*, 574 U.S. 528, 540 (2015) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (quoting *Almendarez–Torres v. United States*, 523 U.S. 224, 234 (1998))).

the statute's words their plain meaning, the most natural interpretation of § 6621(d) is the one adopted by the Federal Circuit in *Energy East Corp.* and *Wells Fargo*: "Section 6621(d) clearly requires that the underpayments and overpayments be *made* 'by the same taxpayer.'" *Energy E. Corp.*, 645 F.3d at 1362 (emphasis added); *see also Wells Fargo*, 827 F.3d at 1034–35. Because Bank of America and Merrill were different corporations and thus different taxpayers when the underpayment and overpayments were made, Bank of America is not entitled to interest netting in the two test cases.

The bank's remaining arguments "read like elaborate efforts to avoid the most natural meaning of the text." *Patel*, 142 S. Ct. at 1623. Trying to peg the overpayment and underpayment dates to points following the merger, the bank appeals to various timing rules scattered throughout the Code and its implementing regulations, such as statutes of limitations. *See* Pl.'s Reply 18–21, Doc. No. 76 (first citing 26 U.S.C. §§ 451–70; then citing 26 C.F.R. §§ 1.451-1(a), 1.461-1(a)(2)(i); then citing 26 U.S.C. §§ 6502(a)(1), 6601(g); and then citing 28 U.S.C. §§ 2401(a), 2501). But none of those provisions address § 6621(d)'s same-taxpayer requirement. And as explained above, § 6621(d)'s text provides a temporal limitation for interest netting, so there is no need to look elsewhere.

Bank of America also claims that "underpayment" and "overpayment" in § 6621(d) "refer to the taxpayer's balance for a tax year." Pl.'s Reply 15. But the plain meaning of "overpayment" is "[a] payment," not a balance, "that is more than the amount owed or due." *Overpayment*, *Black's Law Dictionary* (11th ed. 2019). The inverse is true for an underpayment: it is a payment that is less than the amount owed or due. The bank falls back on legislative history to support its argument, Pl.'s Reply 15, but the plain text of the statute controls, *see Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1814 (2019) (stating that "ambiguous legislative history" cannot "muddy clear

10

statutory language" (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011))); *see also Energy E. Corp.*, 645 F.3d at 1362 (rejecting arguments based on legislative history when construing § 6621(d)).

Corporate-law principles are cited by the bank. It argues that once two corporations merge, the law treats the acquired corporation "as though it *had always been part* of the surviving entity." Pl.'s Reply 11. True, the surviving corporation becomes liable for the acquired corporation's "debts, liabilities and duties." 8 Del. Code § 259(a). But liability and interest netting are two different things, and a surviving corporation's newly acquired liability does not determine the availability of interest netting under § 6621(d). Under that statute, "later changes in corporate structure" cannot "retroactively change a taxpayer's status as to earlier payments." *Wells Fargo*, 827 F.3d at 1035. The corporations' later-in-time merger "does not change the fact that they were separate at the time of the original payments." *Id.*; *see* 8 Del. Code § 259(a) (stating that the "separate existence of all the constituent corporations" will only "cease" once the merger "become[s] effective").

Bank of America also offers an argument based on the Code's definition of "taxpayer." That word is defined as "any person subject to any internal revenue tax." 26 U.S.C. § 7701(14). The bank says that its postmerger liability for Merrill's premerger tax obligations makes it the same taxpayer who paid Merrill's overpayments for its 1999 and 2005 tax years. Pl.'s Reply 8–9. It stresses that it is "subject to" Merrill's premerger tax obligations. 26 U.S.C. § 7701(14). But again, that mistakenly treats liability as sufficient to satisfy § 6621(d)'s interest-netting requirements. The fact that Bank of America is *now* the taxpayer liable for Merrill's taxes does not make it the taxpayer who paid Merrill's overpayments "*at the time of the payments*." *Wells Fargo*, 827 F.3d at 1035.

11

Bank of America insists that the IRS has already determined that the bank is the taxpayer who made the 2005 overpayment. Pl.'s Reply 17–18 (citing 26 U.S.C. § 6402(a)). The Code states that "the Secretary . . . may credit the amount of [an] overpayment . . . against any liability . . . on the part of the person who made the overpayment." 26 U.S.C. § 6402(a). The bank contends that the IRS used that provision to credit Merrill's 2005 overpayment against the bank's underpayment, but the government denies that the transfer occurred under § 6402(a). Even if it did, it would have occurred because of a discretionary decision by the Secretary, and such a discretionary decision cannot abrogate the requirements for interest netting set out in § 6621(d).[7]

Finally, the bank appeals to "legislative history and statutory purpose," Pl.'s Reply 15, along with § 6621(d)'s alleged "remedial" nature, which the bank says supports a "broad[]" reading of the statute, *id.* at 23. "But legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018). Rather, "[t]he plain language of the statute here controls." *Energy E. Corp.*, 645 F.3d at 1362 (construing § 6621(d)). Furthermore, the "proposition that remedial statutes should be interpreted in a liberal manner" may not "substitute for a conclusion grounded in the statute's text and structure." *CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014); *see also Regions Bank v. Legal Outsource, PA*, 936 F.3d 1184, 1195–96 (11th Cir. 2019) (explaining how the "so-called canon" that remedial legislation should be construed broadly "is of dubious value"). Nor may the Court presume that the statute "pursues its remedial purpose at all costs." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (internal quotation marks omitted); *see also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) ("[I]t is quite mistaken to assume . . . that whatever might appear to further the statute's primary objective must

---

[7] Bank of America also cites internal IRS memoranda written by the agency's attorneys. Pl.'s Mot. Part. Summ. J. 23–24, Doc. No. 67. But those memoranda are irrelevant: by statute, they "may not be used or cited as precedent." 26 U.S.C. § 6110(k)(3).

be the law." (internal quotation marks and alterations omitted)). Instead, because § 6621(d)'s text is "plain," the Court must "enforce it according to its terms." *United States v. Muhammad*, 16 F.4th 126, 128 (4th Cir. 2021); *see also Est. of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476 (1992) ("The controlling principle in this case is the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written.").

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The United States' Motion for Partial Summary Judgment (Doc. No. 68) is **GRANTED**.
2. Bank of America's Motion for Partial Summary Judgment (Doc. No. 67) is **DENIED**.
3. The Clerk is directed to close this case.

Signed: February 14, 2023

Robert J. Conrad, Jr.
United States District Judge